UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| AMBER DANIELLE HOSEA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:17-CV-509-DCP |
| ANDREW M. SAUL,[1] Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Amber Danielle Hosea ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

I. **PROCEDURAL HISTORY**

On December 29, 2014, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on December 27, 2014. [Tr. 13, 146-48]. After her application was denied

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 98]. A hearing was held on August 30, 2016. [Tr. 29-55]. On December 5, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 10-28]. The Appeals Council denied Plaintiff's request for review on October 17, 2017 [Tr. 3-5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 27, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1].[2] The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since December 27, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: interstitial cystitis, fibromyalgia, Sjögren's syndrome, migraines, anxiety disorder, and depressive disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except would be limited to lifting and/or carrying 10 pounds frequently and 20 pounds occasionally. With normal breaks in an eight-hour day, she could sit, stand and/or walk for up to six hours but would need a sit/stand option every 30 to 45 minutes. Additionally, the claimant would need to avoid climbing ladders, ropes, or scaffolds as well as

---

[2] The Complaint states that Plaintiff is seeking review of the denial of both Title XVI Supplemental Security Income benefits and Title II disability; however, the record reflects that Plaintiff's claim proceeded based only on a claim for disability benefits.

avoiding concentrated exposure to vibrations and hazards such as unprotected heights or machinery. Furthermore, as a result of pain, mental limitations and/or migraine headaches, she would be reduced to simple routine repetitive tasks in that she can apply common sense understanding to carry out oral, written, and diagrammatic instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 23, 1985 and was 29 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

[Tr. 15–22].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.   DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

   1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not assign proper weight to the opinion of her treating physician, Dr. Robert Moore. [Doc. 19 at 10–15]. Plaintiff alleges that the ALJ failed to detail an "absence of medically acceptable clinical and laboratory techniques" and any inconsistencies with other substantial evidence to support good reasons for the weight afforded to Dr. Moore's opinion. [*Id.*

5

at 12]. Plaintiff also claims that no harmless error exception applies to the ALJ's failed analysis of the treating physician rule. [*Id*. at 15-16]. The Court will address Plaintiff's specific allegations of error in turn.

     **A.**     **Treatment of Dr. Moore's Opinion**

Plaintiff alleges that the ALJ failed to weigh Dr. Moore's opinion in accordance with the treating physician rule, as the ALJ did not "provide 'good reasons' why the treating physician[ ] [did] not meet either prong of the 'controlling weight' test." [*Id.* at 11-12]. Plaintiff asserts that the ALJ failed to state an absence of medically acceptable clinical and laboratory techniques and failed to specify how the restrictions set forth in Dr. Moore's Medical Source Statement ("MSS") were inconsistent with his treatment notes as summarily concluded by the ALJ. [*Id*. at 12-13].

The Commissioner argues that substantial evidence supports the ALJ's RFC evaluation as the ALJ properly evaluated the medical opinions in assessing Plaintiff's RFC. [Doc. 21 at 6]. Further, the Commissioner maintains that the ALJ's analysis of Dr. Moore's opinion satisfies the regulatory requirements [*Id.* at 15] as he provided "good reasons" for the weight afforded to Dr. Moore's opinion in that "the ALJ's weighing of the opinions came at the end of his discussion of the evidence; he had identified the inconsistencies earlier in his decision, and it was not necessary for him to needlessly reiterate them in weighing the opinion evidence." [*Id.* at 11-12].

Plaintiff began treatment with Dr. Moore in November 2012. [Tr. 406].[3] Dr. Moore referred Plaintiff to Dr. Carlos Rollhauser on November 29, 2012, due to abdominal distension, upper abdominal discomfort, and blood in stool. [Tr. 276]. On December 18, 2012, Dr. Rollhauser

---

[3] Plaintiff states that she was seen by Dr. Moore beginning November 29, *2011* [Doc. 19 at 5], citing to [Tr. 276]; however, [Tr. 276] is actually a treatment note of Dr. Carlos Rollhauser, to whom Plaintiff was referred by Dr. Moore, that is dated November 29, *2012*. [*Id.*]. Dr. Moore's Physical Medical Source Statement reflects that Plaintiff was his patient since November 6, 2012. [*Id*. at 406].

performed a colonoscopy as well as an esophagogastroduodenoscopy and copied Dr. Moore on Plaintiff's report. [Tr. 283-85]. Dr. Moore also referred Plaintiff for an EMG and nerve conduction study, which was performed January 30, 2013, [Tr. 379][4] and later, he referred her to Dr. Timothy Braden of Knoxville Neurology Specialists, PLLC for an evaluation of tremor and limb pain, which was performed on July 8, 2013. [*Id*. at 286]. Plaintiff saw Dr. Moore again on the following dates: December 8, 2014 for, among other conditions, fatigue, nausea and abdominal pain, joint and muscle pain, constipation, irritable bowel syndrome [*Id*. at 375]; February 9, 2015, when Dr. Moore performed a trigger points evaluation and diagnosed Plaintiff with fibromyalgia [*Id*. at 385][5]; March 18, 2015, when Plaintiff was assessed for a right inguinal hernia and fibromyalgia [*Id*. at 388]; and April 10, 2015 for nausea and abdominal pain [*Id*. at 398][6]. Subsequently, Dr. Moore referred Plaintiff back to Dr. Rollhauser for a gastroenterology follow up that took place on August 26, 2015. Dr. Rollhauser performed a GI Upper endoscopy as well as an esophagogastroduodenoscopy on September 24, 2015, and the results were copied to Dr. Moore. [*Id*. at 452-54, 713-14]. Records from Plaintiff's February 8, 2016 emergency room visit at The University of Tennessee Medical Center for abdominal pain, vomiting, constipation and

---

[4] The name of the referring physician on the EMG and Nerve Conduction Study Report [Tr. 379] appears to be a typographical error in that it reflects "Robert *Morse* Jr" instead of "Robert S. *Moore*, Jr." as noted on other medical records. *See e.g.,* [Tr. 673, 679].

[5] The ALJ noted that Plaintiff was diagnosed with fibromyalgia through a trigger points evaluation meeting the qualifications for the diagnosis pursuant to SSR 12-2p. The ALJ states, "[s]pecifically, [fibromyalgia] was diagnosed by a licensed physician and she meets either the 1990 or 2010 ACR criteria." [Tr. 19]. Curiously, the ALJ made no reference whatsoever to the fact that the licensed physician who performed the evaluation was Dr. Moore, Plaintiff's treating physician. [Tr. 385].

[6] The April 10, 2015 record from Seymour Family Physicians at 11657 Chapman Highway, Seymour, TN, was signed by Maggie Farley, NP. This is the same address for Dr. Moore appearing on his May 6, 2016 MSS. [*Id*. at 410].

back pain reflect notations to Dr. Moore as the primary care physician for Plaintiff. [*Id.* at 696]. Thereafter, on May 6, 2016, Dr. Moore prepared the MSS setting forth Plaintiff's limitations. [*Id.* 406-10]. Subsequently, Dr. Moore referred Plaintiff to TN Urology Associates for interstitial cystitis, and he was copied on treatment notes dated June 1, 2016 and July 25, 2016. [*Id*. 419-23]. In between the visits to TN Urology Associates, Plaintiff was again seen by Dr. Rollhauser on June 6, 2016, upon referral by Dr. Moore for nausea, abdominal pain, constipation and small amount of blood in stool, and mildly elevated bilirubin level. [*Id.* at 433]. Dr. Rollhauser performed a colonoscopy on July 1, 2016, and Dr. Moore was copied on the report. [*Id*. at 444-46]. Plaintiff had another emergency room visit at the University of Tennessee Medical Center on August 22, 2016, for chest as well as abdominal pain, and those records also reflect notations to Dr. Moore as the Plaintiff's primary care physician. [*Id.* at 673].

In general, we have held that the opinions of treating physicians are entitled to controlling weight. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529–30 (6th Cir.1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)).[7] "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir.2007) (alteration in original) (quoting 20 C.F.R. § 404.1502). The treating physician doctrine recognizes that physicians who have an extended history caring for a claimant and his

---

[7] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

maladies generally possess significant insight into their patient's medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). While Plaintiff was treated or assessed by other doctors, it is clear from the medical records that Plaintiff has been consistently treated and followed by Dr. Moore as her primary care physician since 2012. Further, the parties do not dispute that Dr. Moore qualifies as a treating source, accordingly, the ALJ was required to provide good reasons for discounting the opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Addressing the opinion evidence of record, the ALJ assigned "little weight" to Dr. Moore's opinion regarding Plaintiff's physical limitations, which was set out in the May 6, 2016 MSS. Among other things, Dr. Moore opined that Plaintiff could lift or carry only five pounds frequently. [Tr. 407]. Plaintiff would have problems with climbing steps without use of a handrail and sometimes experience problem with balance when ambulating. [*Id.*]. Further, Plaintiff could neither walk one city block or more without rest or severe pain nor walk such distance on rough or uneven ground. [*Id.*]. Due to fatigue and pain, Plaintiff would need to lie down/recline from one to two hours during an 8-hour work day. [*Id.*]. Regarding other activities during a work day, Plaintiff could sit for 4 hours; stand and walk for 3 hours; and would require unscheduled breaks. [*Id.* at 407-08]. Dr. Moore did not assess any limitations with respect to reaching, handling or fingering. [*Id.* at 408]. With respect to psychological or emotional factors, Dr. Moore noted that Plaintiff's anxiety would affect her physical condition and/or contribute to the severity of her symptoms and functional limitations. [*Id.*]. He also indicated that Plaintiff would frequently experience pain and occasionally experience stress severe enough to interfere with attention and concentration needed to perform simple work tasks. [*Id.* at 408-09]. Finally, Dr. Moore opined that based on Plaintiff's physical and/or mental limitations, she would be unable to perform work

9

25% of the time in an 8-hour day; is likely to be absent from work an estimated 3 to 5 or more days per month; and is likely unable to complete an 8-hour work day an estimated 3 to 5 or more days per month.[8] [*Id.* at 409].

The ALJ assigned the opinion only "little weight," finding that Dr. Moore's "very restrictive limitations are not consistent with his own treatment notes, the last record being from 2015." [*Id.* at 21]. The ALJ makes this finding after addressing other opinion evidence of record, assigning little weight to the opinion of consultative examiner Dr. Jeffrey Summers, who placed no specific work-related restrictions on Plaintiff; little weight to the opinion of State Agency physician Dr. Thomas Thrush that Plaintiff was capable of a medium exertion, with the ALJ finding a light exertional level to be more appropriate; and "more weight" to the opinion of State Agency physician Dr. G. Albright, M.D., who opined at the reconsideration level that Plaintiff was limited to lifting and/or carrying 10 pounds frequently and 20 pounds occasionally.[9] [*Id.*].

Plaintiff argues that the ALJ's conclusory statement that Dr. Moore's opinion is inconsistent with his treatment notes does not constitute the analysis required by the treating physician rule. [Doc. 19 at 13-18]. First, Plaintiff asserts that the ALJ failed to find Dr. Moore's opinion lacking support from medically acceptable clinical and laboratory techniques. Second, Plaintiff maintains that the ALJ fails to specify how the restrictions in the MSS are inconsistent with Dr. Moore's treatment notes.

---

[8] Dr. Moore noted that the number of days Plaintiff may be absent from work and days she may be unable to complete a full 8 hours of work was an estimation due to "unpredictable flares" of her condition. [*Id.*].

[9] It is noted that Dr. Albright's opinion was prepared in September 2015, which was eight months prior to the MSS prepared by Dr. Moore.

The Commissioner contends that the ALJ provided "good reasons" for the weight afforded to Dr. Moore's opinion. Specifically, the Commissioner argues that while the ALJ recognized that the trigger points evaluation conducted by Dr. Moore in February 2015 qualified as fibromyalgia pursuant to SSR 12-2p, the ALJ also identified substantial evidence not consistent with the opinion, including Dr. Moore's own treatment notes. [Doc. 21 at 33]. In support of this position, the Commissioner maintains that the ALJ had identified inconsistencies earlier in his decision, and therefore when he weighed the opinion evidence later in the decision, he did not have to reiterate the inconsistencies. [*Id.* at 33].

As an initial matter, the Court notes that in the Commissioner's summary of the ALJ's discussion of the evidentiary record, there is no mention of where and to what extent Dr. Moore's conclusions differed from his *own treatment notes*—the only reason ostensibly given by the ALJ for affording Dr. Moore's opinion less than controlling weight. Further, the ALJ's decision is devoid of any degree of specific consideration of Dr. Moore's functional assessments.

In *Gayheart*, the Sixth Circuit detailed that the provided reasons for discounting a treating-source opinion "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Here, the ALJ merely assigned the opinion of Dr. Moore's MSS little weight and explained that finding by the secondary criteria set out in 20 C.F.R. §§ 404.1527(c)(i)-(ii), (3)-(6) of the regulations, specifically the inconsistency between the opinion and Dr. Moore's own treatment

11

notes. In doing so, the ALJ collapsed the two distinct analyses explained in *Gayheart.* The first required analysis considers whether the treating source's opinion should receive controlling weight based on it being well-supported by medically acceptable techniques and not inconsistent with the other substantial evidence. The second analysis, which is to be conducted only if the ALJ decides not to give the treating source's opinion controlling weight, considers what weight to assign the opinion based on the factors set out in 20 C.F.R. § 404.1527(c)(2), including length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Gayheart*, 710 F.3d at 376.

In collapsing the analyses, the ALJ shortcut the process in not assessing Dr. Moore's opinion for controlling weight before moving into the regulatory balancing factors. While the ALJ found Dr. Moore's opinion to be inconsistent with his own treatment notes, this factor would be properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight. *Gayheart*, 710 F. 3d at 376. Therefore, the ALJ's conclusory finding that Dr. Moore's opinion was not supported by his treatment notes of record is not an adequate basis for rejecting Dr. Moore's opinion.

Even assuming that the ALJ conducted the controlling weight test as to Dr. Moore's opinion as the treating physician—which the undersigned concludes he did not—the undersigned further finds the ALJ gave only a conclusory reason as to the ultimate weight accorded. Specifically, while the ALJ found that Dr. Moore's "very restrictive limitations are not consistent with his own treatment notes," the ALJ fails to cite any specific treatment note(s) within the record in support of such conclusory contention, and such omission constitutes an error. S*ee Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 552 (6th Cir. 2010) (holding that "it is not enough to

12

dismiss a treating physician's opinion as 'incompatible' with other evidence of record" in the absence of "some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion" is accorded less than controlling weight).

The Commissioner attempts to identify evidence in the record to discount Dr. Moore's opinion, other than evidence from his own treatment notes; however, the Court finds that such efforts constitute a post-hoc rationalization in support of the ALJ's decision. *See Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . .") (internal citations omitted); *Schroeder v. Comm'r of Soc. Sec.*, No. 11–14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (finding the Commissioner's "post hoc rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence), *report and recommendation adopted by*, 2013 WL 1294127 (E.D. Mich. Mar. 29, 2013). The ALJ's failure to adequately explain the reasons for the weight given to a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakley v. Comm'r of Social Sec.,* 581 F.3d 399, 407 (6th Cir. 2009) (emphasis in the original) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007)).

Ultimately, the Court concludes that the ALJ failed to provide "good reasons" that were "sufficiently specific" for discounting Dr. Moore's opinion. *See Gayheart,* 710 F.3d at 376 (6th Cir. 2013) (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). Accordingly, Plaintiff's allegation of error therefore constitutes a basis for remand.

### B. Harmless Error

The failure to provide "good reasons" for not giving a treating source's opinion controlling

weight hinders a meaningful review of whether the ALJ properly applied the treating physician rule. *Id.* at 377. While the Sixth Circuit has instructed that courts should not hesitate to remand a case when an ALJ fails to adhere to the treating physician rule, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), remand is not necessary if violation of the "good reason" rule is harmless. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). Error is harmless when:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [20 C.F.R.] § 404.1527(d)(2)... even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006)).

The Court finds that the first two potential exceptions are not applicable in the present case. *See, e.g.*, *Bartolome v. Comm'r of Soc. Sec.*, No. 1:09-cv-712, 2011 WL 5920928, at *8 (W.D. Mich. Nov. 28, 2011) ("Though Dr. Braman's opinion is somewhat conclusory, it is not so contradictory to the evidence on record as to be 'so patently deficient that the Commissioner could not possibly credit it.'"). Further, the Court finds that the ALJ's failure to provide good reasons for not assigning Dr. Moore's opinion controlling weight was not harmless error, as the only stated reason for assigning little weight to the opinion was an alleged inconsistency with Dr. Moore's own treatment notes. *Cf. Klusmeier v. Berryhill*, No. 3:16-cv-039, 2017 WL 1066641, at *7 (E.D. Tenn. Mar. 21, 2017) (finding harmless error where the ALJ provided several good reasons for

assigning limited weight to opinion of treating physician, including noting brief nature of treating relationship, nature and extent of the treating relationship, as well as stating that a finding that the plaintiff would be unable to complete an eight-hour workday is an issue reserved to the Commissioner).

While an ALJ is not required to explicitly discuss every factor under 20 C.F.R. § 404.1527(c)(2), as detailed above, the ALJ failed to mention any factor other than the purported inconsistency with Dr. Moore's own treatment notes. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Plaintiff correctly states that the ALJ failed to discuss Dr. Moore's treatment relationship with Plaintiff, or any additional factors regarding his opinion. *See Cummings v. Comm'r of Soc. Sec.*, No. 3:11-CV-614, 2013 WL 1192817, at *5–6 (E.D. Tenn. Mar. 22, 2013) (reasoning it could not be found that the ALJ "implicitly" discussed the relevant factors of the length of treatment relationship and the frequency of examination, as although the ALJ summarized the dates of treatment, "there is no indication that the ALJ considered those factors in determining what weight" to give to the opinion).

While the Commissioner asserts that remand is not necessary because substantial evidence supports the ALJ's RFC [Doc. 21 at 28], this does not excuse the ALJ's failure to adequately address the treating physician rule. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . .") (internal citations omitted); *Schroeder v. Comm'r of Soc. Sec.*, No. 11–14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (finding the Commissioner's "post hoc rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence), *report and recommendation adopted by*, 2013 WL

1294127 (E.D. Mich. Mar. 29, 2013).

Therefore, the Court concludes that the ALJ's failure to provide good reasons for rejecting Dr. Moore's opinion does not constitute harmless error, as the ALJ did not meet the goal of the treating physician rule. *See Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (citing *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009)).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 18**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to reconsider the opinion of Plaintiff's treating physician.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge